FILED

2006 Dec-11  AM 11:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| FARON YOUNG, | ) | |
| PLAINTIFF, | ) | |
| VS. | ) | **2:05-cv-2495-JHH** |
| CVS/PHARMACY, | ) | |
| DEFENDANT. | ) | |

## MEMORANDUM OF DECISION

The court has before it the October 16, 2006 motion (doc. # 27) of

defendant CVS/Pharmacy (hereinafter "CVS") for summary judgment.  Pursuant

to the court's October 23, 2006 order, the motion was deemed submitted, without

oral argument, on November 27, 2006.

## I. Procedural History

Plaintiff Faron Young commenced this action on October 26, 2005 by filing

a complaint in the circuit court for Jefferson County alleging violations of the

Alabama Age Discrimination in Employment Act of 1997, Ala. Code §§ 25-1-20

et seq. (hereinafter "AADEA"), negligent training, hiring and supervision, and

breach of contract.[1]  More specifically, plaintiff contends that defendant's alleged

---

[1] Plaintiff filed a motion to voluntarily dismissed the breach of contract claim with
prejudice, which was granted on September 18, 2006.  (See doc. # 26.)

conduct amounted to (1) a hostile work environment and (2) discriminatory discharge under the AADEA, and that defendant failed to protect plaintiff from the alleged discrimination and harassment by negligently hiring, training, and supervising plaintiff's supervisor. Defendant's October 16, 2006 motion for summary judgment asserts that plaintiff's claims fail as a matter of law.

Both parties have filed briefs and submitted evidence in support of their respective positions. Defendant submitted a brief (doc. # 28) and evidence[2] (docs. # 28-29) in support of its own motion for summary judgment on October 16, 2006. On November 20, 2006, plaintiff filed a brief (doc. # 38) and evidence[3] (docs. #

_____

[2] The defendant submitted the following evidence: deposition of Faron Young (excluding pages 23-24); Your Guide to CVS; 1/18/2005 Termination letter; 1/13/2005 Every Visit Review; EEOC Charge; 10/11/2004 Coaching and Counseling; 11/16/2004 Coaching and Counseling; 11/10/2004 Every Visit Review; 10/13/2004 Every Visit Review; 9/9/2004 Every Visit Review; 8/3/2004 Every Visit Review; 11/5/2003 Coaching and Counseling; 8/26/2003 Coaching and Counseling; 11/21/2002 Coaching and Counseling; 5/16/2002 Coaching and Counseling; 5/7/2002 Coaching and Counseling; 4/16/2001 Coaching and Counseling; 9/1/1998 Store Manager Performance Evaluation; 9/17/1999 Store Manager Performance Evaluation; 9/13/2000 Store Manager Performance Evaluation; 2 undated Store Manager Performance Evaluations; deposition of Richard Hughes; deposition of Tom McMann; deposition of Richard Howard; Building Sales through Diversity; affidavit of Richard Hughes; CVS Code of Conduct; Diversity Skills Training Area 4 Roster; Building a House for Diversity (cover, table of contents, and preface); Managing Across Difference; Preventing Workplace Harassment; Our Differences Create Strength; 9/22-24/2002 Powerpoint Presentation; list of individuals hired by Richard Hughes; list of individuals promoted by Richard Hughes; list of individuals terminate by Richard Hughes; 1/18/2005 list of store managers in Hughes's district; current list of store managers in Hughes's district; affidavit of Darren Twedell; letter of Faron Young.

[3] The plaintiff submitted the following evidence: affidavit of Sharon Brown with exhibits; affidavit of Richard Rodriguez; deposition of Justin Carr; deposition of Norman Mowery; defendant's exhibits 1, 2, 7, 8, 26 and 27 to plaintiff's deposition; plaintiff's exhibits 1-46 to plaintiff's deposition; deposition of Dr. Michael Chen; deposition of Richard Rodriguez;

36-37) in opposition to defendant's motion for summary judgment.  On November 27, 2006, defendant filed a brief (doc. # 39) in reply to plaintiff's opposition.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  See id. at 323.  Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  See id. at 324.

The substantive law will identify which facts are material and which are irrelevant.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All

---

deposition of Michael Dramer.

3

reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  See id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Prop., 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  See Fitzpatrick, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus

4

demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  See Fitzpatrick, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set

forth evidence of specific facts.  See Lewis v. Casey, 518 U.S. 343, 358 (1996)

(citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

### III. Relevant[4] Undisputed Facts[5]

The facts underlying the instant complaint are not complicated.  The court

begins with a brief explanation of the structure of CVS and the relevant policies in

place at the time of the alleged harassment and discrimination.  The court then

moves on to the facts surrounding the allegations of harassment and Young's

termination.

### A.  CVS

CVS is a retail drug store chain.  CVS operates stores throughout Alabama,

and operates the two stores at issue in this case, store number 4828, in Hueytown,

Alabama and store number 4898, in the Five Points West area of Birmingham,

Alabama.  (See Young Dep. at 64).

---

[4] The court is aware that plaintiff's brief contains many other "facts" than the ones recounted by the court (in fact, plaintiff's recitation of the facts is 33 pages long).  The court purposefully excluded these "facts" as they are not relevant to the issue at hand, whether Hughes terminated Young because of his age.  Most of the "facts" are better characterized as jury arguments, including, but not limited to, the opinions of co-workers regarding the alleged harassment and a detailed comparison between Young and the individual who replaced him. These "facts" or argument are not material at the summary judgment stage.

[5] If the facts are in dispute, they are stated in a manner most favorable to the non-movant. See Fitzpatrick, 2 F.3d at 1115.

6

The organizational structure of CVS includes the positions of store manager, district sales manager and regional sales manager.  Store managers are responsible for the total operation of their stores, including managing, supervising and training store employees, enforcing the anti-discrimination and anti-harassment policies, ensuring good customer service, merchandising, building customer loyalty and processing inventory.  (Hughes Aff. ¶ 2.)  Store managers report to district sales managers.  (Id.)  District sales managers are assigned areas encompassing several stores and are responsible for the stores within their assigned district.  (Id.)  The district sales managers report to regional sales managers.  (Id. ¶ 3.)  CVS also employs human resources professionals who partner with management to provide human resources services. (Howard Dep. at 5.)

CVS has a workplace anti-discrimination and anti-harassment policy that prohibits all forms of discrimination and harassment, including that based on age. (Your Guide to CVS at 21.) A copy of "Your Guide to CVS" is issued to all CVS employees, and store managers are responsible for distributing the handbook to employees.  (Young Dep. at 137.)   Employees who experience workplace discrimination or harassment are instructed to report it to their supervisor.  (Id.) When the improper conduct is alleged on the part a supervisor, employees are

instructed to report it to the human resources manager. (Your Guide to CVS at 23.)
CVS also employs a toll-free Ethics Line for employees to communicate ethically
inappropriate or illegal conduct.  (Id. at 6-7).  Store managers inform employees of
the discrimination policies and the policies are posted in the employee break room.
(Young Dep. at 137.)  In addition, CVS has a Code of Conduct which prohibits
discriminatory activities including those based on age and provides instructions on
how to report discriminatory or other misconduct.  (See CVS Code of Conduct.)  It
is undisputed that Young received and read "Your Guide to CVS," that he was
aware of the Ethics Hotline, and that he understood that he could report any
discriminatory or harassing conduct to the human resource department.  (Young
Dep. at 136-38.)

### B.  Young's Employment with CVS

Young was born on July 1, 1954, and graduated from high school in 1972.
(Young Dep. at 11, 60.)  In 1975, Young went to work for Big B drug store.  (Id.
at 59.)   At Big B, Young worked as an assistant manager, store manager, and
merchandiser.  (Id. at 62-63.)  Big B was purchased by Revco, which was then
purchased by CVS.  (Id. at 63-64.)  When CVS purchased the drug store chain,
Young was the store manager of the Five Points West store.  (Id. at 70-71.)  Some

time afterwards, Young was transferred to the Hueytown store to help open it under the new name, CVS.  (Id.)

As store manager, Young had a series of supervisors including Mike Dramer, Herb Farley, Tom McMann, and Donald Long.  (Id. at 72-80, 87.)  Tom McMann supervised plaintiff at the Hueytown and Five Points West locations. (Id. at 72-73, 80.)  Under McMann's supervision, Young was transferred from the Hueytown store back to the Five Points West location, a lower volume store.  (Id. at 75.)  McMann transferred Young because McMann thought that Young, who was having problems with store conditions, might perform better in a lower volume store and help control shrink problems[6] at the Five Points West location. (McMann Dep. at 12, 140; Young Dep. at  75-78.)

Young experienced some problems with McMann as his district sales manager.  Young testified that those problems developed when McMann told Young to dispose of some merchandise in the back room of the store in a way that Young thought was illegal and unethical.  (Young Dep. at  84-86.)  When Young refused to follow McMann's instructions, McMann yelled at Young, slapped his fist on the desk and pointed his finger in Young's face. (Id. at 86).  Young testified

---

[6] Shrink is a loss of company assets due to pilferage.  (Dramer Dep. at 17-18.)  Young was known as a manager on top of shrink.  (Id. at 18.)

that after this incident, his relationship with McMann changed and that McMann began harassing him by McMann conducting more reviews of Young's store "with an attitude that I'm going to find something wrong." (Id. at 87-88.)

Young reported McMann to Sherry Freeman, the Human Resources Business Partner for his region, in May 2002. (Id. at 86.) Young told Freeman that he believed that McMann was harassing him because of his age. (Id. at 90.) Freeman said that she would talk to McMann and that the conduct would never happen again. (Id. at 86, 90). Freeman had a conversation with McMann about his conduct and informed him that he had probably been too harsh and told him to tone it down. (Id. at 90-91; McMann Dep. at 82-83). Young never complained to Freeman about McMann again. (Young Dep. at 87-88.)

In July 2004, Richard Hughes became district sales manager,[7] and, therefore, Young's supervisor; Hughes was 41 years old during the relevant time period. (Hughes Dep. at 7.) Hughes reported to regional sales manager Darren Twedell, who was 43 years old during the relevant time period. (Hughes Aff. ¶ 3; Twedell Aff. ¶ 1).   Additionally, in early August 2004, Richard Howard replaced Sherry Freeman as the human resources business partner in Young's region. (Howard Dep. at 5-7.)

---

[7] It is unclear from the record whether Hughes replaced McMann.

10

When Hughes first became district manager, he held a meeting with all the store managers and met with each store manager individually after the meeting. (Young Dep. at 101.)  Young testified that Hughes told Young that he would give each store manager six months to perform.  (Id. at 101-02).   In that conversation, Young also contends that Hughes told him that "[h]e preferred younger managers."  (Id. at 101.)   Although Young testified that he told co-workers about this comment, Young admitted that he did not report this statement to CVS management or anyone in human resources.  (Id. at 102-03.)

Young testified that Hughes about a month after the first meeting, Hughes told Young "that he thought the [store manager] job had passed [Young] by."  (Id. at 105-06.)  Young testified that he believes that the comment related to age because CVS was evolving and required an ability to adjust.  (Id. at 107.)  Again, Young did not report this statement to CVS management or anyone in human resources.  (Id. at 118.)[8]

---

[8] Plaintiff's brief also states that "Hughes summoned Young to the front of the store by referring to him as 'the old man.'" (Pl. Opp. Br. at 11.)  The brief cites page 106 of plaintiff's deposition.  No where on page 106 (or any of the surrounding pages) does plaintiff testify that Hughes made this statement.  In fact, a thorough review of plaintiff's deposition reveals that plaintiff never testified that Hughes made this comment, although defense counsel asked plaintiff if he told him all allegations of age discrimination and harassment.  (See Young Dep. at 126).  Plaintiff did submit an affidavit of Sharon C. Brown that states that Hughes came into the store and, referring to Young, asked her "Where is the old man?"  (Brown Aff. ¶ 12.)  There are no allegations, however, that Young heard this comment or that he even knew about this comment.  The court, therefore, disregards all argument by plaintiff's counsel regarding this alleged

In addition, Young testified that Hughes treated him differently than younger managers in meetings.  (Id. at 111.)  He stated that "[w]hen we were in meetings, a younger person could ask a question and he would answer.  If I asked a question I was talked . . . down to.  It was like it was a burden for him to answer a question I asked."  (Id.)  Young testified that after a while he quit asking questions at the meetings because he "felt like . . . Hughes didn't want to answer [his] questions."  (Id. at 113.)  Young stated that Hughes would look at him with what he perceived was "disgust" and "disdain."  (Id. at 114, 116.)  Young did not report Hughes conduct to anyone in CVS management or human resources.  (Id. at 118.)

Young also testified that he believed that Hughes conducted more reviews of his store than any other manager's store.  (Id. at 119.)   Young stated that Hughes was required to perform only four reviews for his entire district in one month, but that Hughes conducted one a month of his store and did not do as many of the stores with younger store managers.  (Id. at 119-20.)  Young stated that he was not offended by the fact that he received more reviews, but that he felt like he was being treated differently.  (Id. at 121.)  Young did not report this belief to CVS management or anyone in human resources.  (Id. at 118-20.)

statement as the record does not reflect that Young was aware of it.

In addition, Young testified that Hughes harassed him by requiring Young to reorganize his stockroom.  (Id. at 123-24.)  Young stated that Hughes required Young to pick up the new fixtures or racks himself, but that Hughes had new or additional fixtures brought to the other stores.  (Id. at 124.)  In addition, Young testified that Hughes provided the other managers with more help in reorganizing their stockrooms.  (Id. at 125.)  Young did not report this conduct to anyone at CVS, other than complaining to Hughes that he had to do the job by himself.  (Id. at 126.)

Young admitted that the above events of alleged harassment did not in any way prevent him from doing his job.  (Id. at 134.)

### C.  Young's Performance Problems

District sales managers are responsible for conducting Every Visit Reviews, or EVRs, which are designed to monitor store conditions and provide instructions to store managers on areas of improvement. (See, e.g., 1/13/05 EVR.)   Between July and November 2004, Hughes conducted four EVRs at Young's  store. Hughes first coached and counseled Young in August 2004 for the store's failure to achieve expectations. (Young Dep. at 177.)   Hughes coached and counseled plaintiff a second time on October 11, 2004 for problems related to

customer service, including not cultivating a customer service oriented team and making sure that every customer found what he was looking for during a store visit. (10/11/04 Coaching and Counseling.)   The results of this coaching and counseling was a verbal warning. (Id.)

Hughes coached and counseled Young for the third time on November 16, 2004 for poor work performance.   (11/16/04 Coaching and Counseling.)  Young had, among other things, failed to complete seasonal markdowns, failed to follow company directives regarding seasonal merchandising and markdowns, and failed to completely work through the warehouse truck within the required 36 hours. (Id.) Hughes noted that the consequence for failure to improve would be termination. (Id.)

The deficiencies from the November 16, 2004 coaching and counseling are reflected in a November 10, 2004 EVR. (11/10/04 EVR.)   Hughes told Young to correct problems in the seasonal aisle in November 2004 and to stage or straighten the back room of the store. (Hughes Dep. at 321-22; 1/18/05 Coaching and Counseling.)   Young had not corrected those problems when Hughes conducted the last EVR on January 13, 2005, which resulted in Young's termination. (Id.)

### D. Young's Termination

After the January 13, 2005 EVR, Hughes decided to terminate Young and received consent from Howard and Twedell.  (Howard Dep. 17.)  Hughes testified that his decision was based on Young's failure to correct the problems identified by Hughes between November 2004 and January 2005, despite the fact that Hughes had warned plaintiff that a failure to improve would subject him to termination. (Hughes Dep. at 329-30.)  Young was informed of his termination on January 18, 2005.  (See Termination letter.)   Hughes told Young that he was being terminated for poor work performance, including his failure to maintain store conditions up to CVS standards and his failure to improve after being provided numerous opportunities to do so.  (Id.)  In his deposition, Young disputed some of the areas of performance, but agreed that some of the conditions existed in the store at the time of his termination.  (Young Dep. at 159-68.)

Young was 52 years old when he was terminated.  (See id. at 11.)  He was replaced by Justin Carr who was 27 years old.  (Hughes Dep. 397-98.)  Carr had been working for CVS for seven months at the time of his promotion to store manager.  (Id.)

## IV. Applicable Substantive Law

At the outset, the court notes that the parties agree that the standard that this court should use to evaluate plaintiff's claims under the AADEA is the standard used to evaluate claims under the federal age discrimination statute.  For suits under the federal age discrimination statute, the Eleventh Circuit Court of Appeals has adopted the principles that govern the order and allocation of proof in cases under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e-17.   See Chapman, 229 F.3d at 1024.  As such, the court will use those precedents in the evaluation of plaintiff's claims.

The analysis of the plaintiff's claims will be determined not only by the nature of the allegations but also by the quality of the evidence offered in support of those claims.  See Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1330 (11th Cir. 1998) ("[t]he analytical framework and burden of production var[y] depending on the method of proof chosen").  In general, a plaintiff may attempt to establish a claim of illegal employment discrimination through the use of direct evidence, circumstantial (indirect) evidence, or statistics.  See id.; see also Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999).  A plaintiff's ability to proceed through the use of circumstantial evidence of discrimination is necessarily important because direct proof of discrimination is uncommon.  See

16

Combs v. Plantation Patterns, 106 F.3d 1519, 1537 (11th Cir. 1997); Grigsby v. Reynolds Metals Co., 821 F.2d 590, 595 (11th Cir. 1987).  Direct evidence is "[s]uch evidence [which], if believed, proves the existence of a fact in issue without inference or presumption."  Burns v. Gadsden State Cmty. College, 908 F.2d 1512 (11th Cir. 1990).  Cf. Wright v. Southland Corp., 187 F.3d 1287, 1293-94 (11th Cir. 1999) (per Tjoflat, J.) (defining direct evidence as "evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic" and finding the outcomes reflected in prior case law consistent with that definition); see also Bass v. Bd. of County Comm'rs, Orange County, Florida, 242 F.3d 996, 1010 (11th Cir. 2001) (discussing meaning of "direct evidence" in the context of a Title VII race discrimination claim; "direct evidence" refers to a type of evidence which, if true, would require no inferential leap in order for a court to find discrimination.").  "Direct evidence is composed of only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor."  Rojas v. Florida, 285 F.3d 1339, 1342, n.2 (11th Cir. 2001)(quoting Schoenfeld, 168 F. 3d at 1266)(citations and quotations omitted). However, direct evidence does not include "stray remarks in the workplace" or "statements by nondecisionmakers" or "statements by decisionmakers unrelated to

17

the decisional process itself." <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 277

(O'Connor, J., concurring) (1989);  <u>see also</u> <u>EEOC v. Alton Packaging Corp.</u>, 901

F.2d 920, 924 (11th Cir. 1990) (quoting <u>Price Waterhouse</u>).

Here, plaintiff has presented only circumstantial evidence of racial

discrimination and retaliation.[9] "In evaluating [discrimination] claims supported

by circumstantial evidence, [the courts of this circuit] use the now-familiar

framework established by the United States Supreme Court in <u>McDonnell Douglas</u>

<u>Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and <u>Texas</u>

<u>Department of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed.

2d 207 (1981)." <u>Combs</u>, 106 F.3d at 1527.  Under the <u>McDonnell Douglas</u> and

<u>Burdine</u> framework, the plaintiff first has the burden of establishing a prima facie

case of discrimination, which creates a rebuttable presumption that the employer

acted illegally.  <u>See</u> <u>id.</u> at 1527-28.  The methods of presenting a prima facie case,

as well as the exact elements of the case, are not fixed; rather they are flexible and

---

[9]  The statements alleged by plaintiff regarding his age (i.e. that Hughes prefers younger managers and that the manager position had "passed by" Young) do not constitute direct evidence of discrimination.  Rather, they are examples of "stray remarks," unconnected with the decision making process, which do not rise to the level of direct evidence.  Direct evidence must go beyond that which reflects a general legally impermissible bias and instead must establish, without the need of inference or presumption, that the bias actually played a role in the employer's decision making process and had a determinative influence on the outcome.  The alleged comments by Hughes are not direct evidence.

depend to a large degree upon the facts of the particular situation.  See, e.g., Nix v. WLCY Radio/Rahall Commc'n, 738 F.2d 1181, 1185 (11th Cir. 1984); Lincoln v. Bd. of Regents of Univ. Sys., 697 F.2d 928, 937 (11th Cir. 1983).  In general, a plaintiff establishes a prima facie case of disparate treatment employment discrimination by showing that he or she was a qualified member of a protected class and was subjected to an adverse employment action but that otherwise similarly situated employees outside the plaintiff's class were treated dissimilarly.[10]  See McDonnell Douglas, 411 U.S. at 802 (hiring); Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (discipline); see also Nix, 738 F.2d at 1185 (discipline); Pittman v. Hattiesburg Mun. Separate Sch. Dist., 644 F.2d 1071, 1074 (5th Cir. 1981) (wages).

Once the plaintiff has shown a prima facie case and, thereby, has raised the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.[11]  See Rojas, 285 F.3d at 1342; Combs, 106 F.3d at 1528.  The employer "need not persuade the

---

[10] See also McDonnell Douglas, 411 U.S. at 802 n.13 ("The facts necessary will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not applicable in every respect in different factual situations.").

[11] See Chapman, 229 F.3d at 1032 (A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which the employer based its subjective opinion.).

court that it was actually motivated by the proffered reasons." <u>Burdine</u>, 450 U.S. at 254-55; <u>see</u> <u>Chapman</u>, 229 F.3d at 1024.  If the employer satisfies that burden by articulating one or more such reasons, then the presumption of discrimination falls and the burden of production again shifts to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination.[12]  Although the prima facie case is irrelevant once the employer has offered a legitimate reason for its actions, the evidence of pretext may include the same evidence offered to establish the prima facie case.  <u>See</u> <u>Combs</u>, 106 F.3d at 1528.

Despite this shifting of the burden of production between the plaintiff and the defendant under the <u>McDonnell Douglas</u> and <u>Burdine</u> framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." <u>Burdine</u>, 450 U.S. at 253.  Given that the ultimate burden of persuasion always lies with the employee, a plaintiff may prevail on an employment discrimination claim and may also defeat a summary judgement either by proving that intentional discrimination did indeed motivate the defendant or by producing sufficient

---

[12] If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it.  Simply quarreling with that reason is not sufficient.  <u>Chapman</u>, 229 F.3d at 1030.

20

evidence to allow a rational trier of fact to disbelieve the employer's proffered

legitimate reasons, thus permitting but not compelling the trier of fact to make a

finding of illegal discrimination.  See Reeves v. Sanderson Plumbing Prods., Inc.,

530 U.S. 133, 147-48 (2000) (pointing out that the production of the necessary

sufficient evidence by plaintiff will not always prevent the employer from

prevailing on a Rule 50 motion and suggesting that the strength of plaintiff's

prima facie case, the probative value of the proof that the employer's explanation

is false, and any other properly considered evidence that supports the employer's

case are among other factors to take into account in evaluating a Rule 50

motion);[13] St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993); Abel v. Dubberly,

210 F.3d 1334, 1339 (11th Cir. 2000); Alexander v. Fulton County, 207 F.3d

1303, 1336 (11th Cir. 2000); Combs, 106 F.3d at 1529-38 (interpreting Hicks and

the post-Hicks case law); Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 920-

21 (11th Cir. 1993).

## V.  Discussion

Plaintiff's complaint contains the following claims: (1) hostile work

environment in violation of the AADEA; (2) wrongful termination in violation of

---

[13] The court in Chapman modified the statement in Combs contrary to this holding in Reeves after noting that the standard for granting summary judgment mirrors the standard for judgment as a matter of law.  See Chapman, 229 F.3d at 1025, n.11.

the AADEA; and (3) negligent hiring, training, and supervision.   Defendant's

motion for summary judgment asserts that plaintiff's claims fail as a matter of law.

The court addresses each claim separately.

### A.  Hostile Work Environment

A hostile work environment claim is established upon proof that "the

workplace is permeated with discriminatory intimidation, ridicule, and insult, that

is sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment." Harris v. Forklift

Systems, Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993).  The Eleventh Circuit

has repeatedly instructed that a plaintiff wishing to establish a hostile work

environment claim must show: (1) that he belongs to a protected group; (2) that he

has been subject to unwelcome harassment; (3) that the harassment must have

been based on a protected characteristic of the employee, such as age; (4) that the

harassment was sufficiently severe or pervasive to alter the terms and conditions

of employment and create a discriminatorily abusive working environment; and

(5) that the employer is responsible for such environment under either a theory of

vicarious or of direct liability.  Mendoza v. Borden , 195 F.3d 1238, 1245 (11th

Cir. 1998).   CVS argues that Young cannot meet the fourth or fifth prongs of his

prima facie case.  (Def. Br. at 19-26.)  The court agrees with CVS.

To determine whether harassment was severe and pervasive to alter Young's terms and conditions of employment the court considers the following four factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Allen v. Tyson Foods, 121 F.3d 642, 647 (11th Cir. 1997) (citing and applying Harris, 510 U.S. at 23). In addition, the employee must meet both a subjective and objective test. See Mendoza, 195 F.3d at 1246. The employee must establish not only that she subjectively perceived the environment as hostile, but also that a reasonable person would perceive the environment to be hostile and abusive. Watkins v. Bowden, 105 F.3d 1344, 1355-56 (11th Cir. 1997). The objective severity of harassment should be judged from the perspective of a reasonable person in the employee's position, considering all the circumstances. Id.

The allegations made by Young do not come close to establishing that the harassment was severe and pervasive. First, the record does not establish that the alleged conduct and remarks were particularly frequent. In the six months while Hughes was Young's supervisor, Hughes made a total of two comments to Young

23

that could possibly be related to his age[14] and Hughes apparently made Young uncomfortable at one manager meeting per month.  In addition, Young testified that Hughes harassed him by conducting more EVRs of his store and by requiring that he reorganize his stockroom without any help.  The sporadic comments and alleged harassing conduct cannot be said to be frequent as a matter of law.  Second, although these two comments and conduct at the meeting were offensive to Young, they were not particularly severe, and were definitely not physically threatening or humiliating.  At the most, the comments were offensive utterances and although the conduct at the meetings made Young feel uncomfortable, there is no hint that Hughes's conduct was because of Young's age.  Additionally, there is no indication that the other alleged conduct had anything to do with Young's age.  Finally, the record does not establish that the alleged harassment interfered with Young's ability to do his job.  Instead, Young admitted in his deposition that the alleged harassment did not keep him from doing his job.  (Young Dep. at 134.)

Allowing Young's hostile environment claims to continue would be dishonest to the longstanding proposition that Title VII is not a federal "civility code."  Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75 (1998).

---

[14] The court notes that it is troubled as to whether the "passed by" comment in any way relates to Young's age.  The court will assume, for the purposes of summary judgment, that the comment was in relation to Young's age.

Construing the facts in the light most favorable to Young in the totality of the circumstances, the actions complained of by Young were not sufficiently severe or pervasive to alter his terms or conditions of employment. CVS, therefore, is entitled to summary judgment as to this claim.[15]

### B.  Discriminatory Discharge

Young's complaint alleges that defendant terminated him because of his age, in violation of the AADEA. Defendant's motion for summary judgment asserts that plaintiff has failed to establish a prima face case for plaintiff's claim against defendant. Even if he did establish a prima facie case, defendant argues that plaintiff has failed to offer evidence sufficient for a reasonable jury to conclude that defendant's legitimate, nondiscriminatory reasons for his termination was a pretext for age discrimination. As such, defendant contends it is entitled to summary judgment on plaintiff's termination claim.

### 1.  Prima Facie Case

---

[15] In addition, defendant is entitled to summary judgment on plaintiff's harassment claim under the Faragher/Ellerth defense. As correctly noted by defendant in its reply brief, plaintiff's 63 page brief did not respond at all to defendant's argument regarding this defense. Moreover, plaintiff admitted in his deposition that he was aware of CVS's widely disseminated policy against harassment that required employees to report offending conduct and set out procedures by which such report would be investigated and remedied. Plaintiff also admitted that he never reported any of the alleged harassment by Hughes to CVS. This admission is important as Young successfully used the reporting mechanisms when he felt that he was harassed by his previous supervisor, McMann.

As outlined in detail above, the Eleventh Circuit uses the framework established in McDonnell Douglas and Burdine to evaluate discrimination claims that are based upon circumstantial evidence of discrimination.[16] Chapman, 229 F.3d at 1024 (citations omitted).  Under that framework, the plaintiff must first establish a prima facie case of discrimination.  See Combs, 106 F.3d at 1527-28 (citations omitted).  One method a plaintiff can use to establish a prima facie case of age discrimination is by showing that he (1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the job, and (4) was replaced by or otherwise lost a position to a younger individual. Benson v. Tocco, Inc., 113 F.3d 1203, 1207-08 (11th Cir. 1997).

It is undisputed that Young is a member of the protected group, that he was subjected to an adverse employment action, termination, that he was qualified, and that a younger individual replaced Young.  CVS argues, however, that Young failed to establish a prima facie case because he did not establish that he performed his job satisfactorily.  (Def. Br. at 29-30.)  As correctly noted by Young, however, the Eleventh Circuit does not require a plaintiff to establish

---

[16] Again, the court rejects plaintiff's argument that the alleged statements by Hughes constitute direct evidence of discrimination.  Instead, they are merely "stray remarks" that do not rise to the level of direct evidence.  As such, the court evaluates plaintiff's claims under the circumstantial method of proof only.

satisfactory job performance at the prima facie stage.  See, e.g., Kelliher v. Veneman, 313 F.3d 1270, 1275 (11th Cir. 2002); Chapman, 229 F.3d at 1024; Benson, 113 F.3d at 1207-08.   The undisputed record, therefore, supports the conclusion that Young established a prima facie case of age discrimination.

   2.  Legitimate, Nondiscriminatory Reasons for Termination and Pretext

   CVS articulated a legitimate, nondiscriminatory reason for Young's termination, namely his poor job performance.  (See Termination Letter; Hughes Dep. at 329-30.)  More specifically, CVS contends that Young was terminated for his failure to maintain store conditions to the standards set by CVS and that he failed to improve despite numerous opportunities.  (See id.) As such, CVS met its light burden, and the burden of production now shifts to Young, who must offer evidence sufficient for a reasonable jury to conclude that the articulated reason "is unworthy of credence" or that CVS was more likely motivated by a discriminatory reason.  Holifield, 115 F.3d at 1565.

   Young first argues that the remarks made by Hughes regarding plaintiff's age are evidence sufficient to establish pretext.  The record contains two isolated comments by Hughes regarding Young's age.  The first comment was that Hughes told Young at their first meeting that he preferred younger managers.  (Young Dep. at 101.)  The second comment was that Hughes told Young "that he thought

27

the [store manager] job had passed [Young] by." (Id. at 106.)  It is unclear from the record when this alleged comment was made.  Neither comment had anything to do with the termination decision or related in any way to Young's work performance.[17]  The Eleventh Circuit has stressed that "[a]lthough a comment unrelated to a termination decision may contribute to a circumstantial case for pretext, see Ross v. Rhodes Furniture, Inc., 146 F.3d 1286 (11th Cir. 1998), it will usually not be sufficient absent some additional evidence supporting a finding of pretext."  Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1229 (11th Cir. 2002) (citing Rojas, 285 F.3d at 1343).

Young relies on two other pieces of evidence to establish pretext.  First, Young contends that CVS did not follow its termination policy.  Second, he argues that the legitimate, nondiscriminatory reason articulated by CVS is unworthy of credence, and that the thirteen listed reasons in the termination letter were "misnomers."  (Pl. Opp. Br. at 52.)  After a close examination of the record, the court concludes that neither pieces of additional evidence are persuasive on the issue of pretext.

---

[17] In addition, the court questions whether the second comment had anything to do with age at all.   That plaintiff thought Hughes was referring to his age does not make it so.

28

Young's argument regarding the termination policy does not have merit. Young contends that he was terminated against company policy because Hughes did not give him a performance evaluation before his termination and Hughes did not relay standards and expectations of job performance before Young's termination.  (Pl. Opp. Br. at 22.)  This argument is not supported by the record. Young's argument insinuates that the type of performance evaluation required before an employee can be terminated is a yearly performance evaluation.  The record belies such an argument.  Instead, Richard Howard testified in his deposition that an EVR qualifies as a performance appraisal and that an employment performance evaluation or annual review is not required before termination.  (Howard Dep. at 72-73, 96.)  It is undisputed that Young received numerous EVRs before his termination and had ample opportunities to remedy the shortcomings noted in those evaluations.  In addition, the record reflects that Hughes consistently relayed standards and expectations to Young before Young's termination.  (Hughes Dep. at 231, 321-22, 340-41.)

Young's final argument boils down to a disagreement about CVS's reason for his termination.  Young spends countless pages in his brief reciting statistics, pointing to evidence that Young's store was not in the condition alleged, and challenging the merits of Hughes's conclusion that Young's performance was

29

inadequate.  Such arguments do not come close to establishing pretext in the

Eleventh Circuit.  "A plaintiff must show not merely that the defendant's

employment decisions were mistaken but that they were in fact motivated by" age.

Lee, 226 F.3d at 1253.  No where in plaintiff's argument or in the record is there

any evidence that Hughes did not believe that Young's performance was

inadequate.   The role of the court "is to prevent unlawful hiring practices, not to

act as a super personnel department that second-guesses employers' business

judgments." Id. at 1254.  The court's "sole concern is whether unlawful

discriminatory animus motivates a challenged employment decision."  Damon,

196 F.3d at 1361.  Young's evidence does nothing more than show that CVS may

have made an unwise business decision; it does not create a question of fact as to

whether CVS terminated Young because of his age.

In summary, although Young established a prima facie case of age

discrimination, Young failed to offer evidence sufficient for a jury to conclude that

CVS's legitimate, nondiscriminatory reasons for his termination was a pretext for

age discrimination.   As such, summary judgment is due to be granted in favor of

CVS on this claim.

## C.  Negligent Hiring, Training and Supervision

Young's negligence claim under Alabama law fails for any number of reasons.  The fundamental reason why this claim fails is because, as discussed in detail above, Young has not offered evidence sufficient for a reasonable jury to conclude that Hughes engaged in any sort of wrongful or illegal conduct.  In Stevenson v. Precision Standard, Inc., the Alabama Supreme Court stressed that "the only means of attaching liability to [the employer] would be to prove the wrongful conduct by [the employee] as its agent."  762 So.2d 812, 824-25 (Ala. 1999).

Additionally, even if the court is mistaken about whether Young offered evidence sufficient for a reasonable jury to conclude that Hughes engaged in the alleged wrongful conduct, Young's negligence claim still fails because he did not offer evidence that CVS knew or should have known that Hughes was likely to harass or discriminate against Young.  Under Alabama law, an employer "is held responsible for [an employee's] incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to [the employer]. Liability depends upon its being established by affirmative proof that such incompetency was actually known by the [employer] or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with

31

such knowledge." Big B, Inc. v. Cottingham, 634 So.2d 999, 1003 (Ala. 1993) (quoting Lane v. Central Bank of Alabama, N.A., 425 So.2d 1098, 1100 (Ala. 1983)).  An employee may prove such negligence " by showing specific acts of incompetency and bringing them home to the knowledge of the [employer], or by showing them to be of such nature, character, and frequency that the [employer], in the exercise of due care, must have had them brought to his notice."  Id.

The undisputed evidence simply does not establish that Young ever complained to CVS about Hughes alleged wrongful conduct.  Young repeatedly testified in his deposition that he did not bring any of the alleged incidents of harassment by Hughes to the attention of anyone at CVS.  Moreover, Young has not presented any evidence that CVS should have known of Hughes's alleged propensity to engage in age harassment or discrimination against subordinate employees.  See Sanders v. Shoe Show, Inc., 778 So.2d 820, 824 (Ala. Civ. App. 2000).   In fact, the record is devoid of any such knowledge, actual or constructive, on the part of CVS.  As such, CVS is entitled to summary judgment on Young's negligence claim.

## VI.  Conclusion

In summary, the court finds that no material issues of fact remain and that defendant CVS/Pharmacy is entitled to judgment as a matter of law as to all claims asserted by plaintiff.[18]

A separate order will be entered.

**DONE** this the ___11th___ day of December, 2006.

_____

SENIOR UNITED STATES DISTRICT JUDGE

---

[18]  This decision renders **MOOT** all other pending motions (docs. # 21, 41, 43, and 47.)